JOHN R. IRVINE & Co., Appellants, *vs.* THE STEAMBOAT " HAMBURG," Respondent.

**APPEAL FROM A JUDGMENT OF THE DISTRICT COURT OF RAMSEY COUNTY.**

The Court gives the following construction to Chapter 76 of the Statutes of Minnesota, " for the collection of demands against boats and vessels," to wit:

That causes of action arising wholly without the limits of the State, are not entitled to the special remedies of the act, and if parties seek our Courts as the forum to enforce their rights in such cases, they must adopt the Common law remedies.

That causes of action arising upon contracts made and broken within the State, and contracts made within, and broken without the State, and contracts made without, to be performed within the State, are all entitled to the remedies of the Statute; and that the same principles govern causes of action mentioned in the Statute, not arising out of contracts.

The issues arise upon the question of the jurisdiction of the Courts of the State, under Chapter 86 of the Revised Statutes, An Act " for the Collection of Demands against Boats and Vessels." *Stat. of Min. Chap.* 76, *p.* 647.

The following are the points and authorities relied upon by the Counsel for the Appellants:

The decision and Judgment of the District Court, in the above entitled action, are erroneous, in that:

*First.*—Because, the learned Judge, who tried the case, and in his conclusions, in holding, that, because the original contract of affreightment, between G. R. West & Co., consignors,

and the Defendant, was made at Dubuque, Iowa, it was so, also, with the Plaintiffs, the consignees : when in law and in fact, in the absence of special circumstances varying the rule the consignees of a shipment of goods, only became parties to the contract, at the time and place of the receipt and retention of the bill of lading. *Edwards on Bails.*, 542, 543.

*Second.*—Because, as between the Plaintiffs and Defendant, the *locus contractu*, was the place where the bill of lading was received by the former; and the finding, by the Judge, of the fact, that the original contract between the consignors and the defendant, was made at Dubuque, Iowa, does not militate against the legal presumption that the bill of lading was received at the port to which the goods were shipped and at which the consignees carried on their business. *Leckbanon vs. Mason*, 1 *Smith L. Ca.* 849 *and cases cited.*

*Third.*—Because, whether the contract, which is the basis of the action, was made in St. Paul or not, it was to have been performed there, and it is the non-performance of its provisions that is complained of, and which constitutes the cause of action set up in the complaint. *Chap.* 86 *Rev. Stat.*

*Fourth.*—Because, no matter where the contract is made, in all cases of demands against steamboats, covered by chapter 86 of the Revised Statutes, except those for wharfage and anchorage alone, our Courts have jurisdiction, under the provisions of that chapter. 1 *Manning (Mich.) R.* 507 *to* 511 ; *Id.* 171–469.

*Fifth.*—Because, even under the finding of the Judge, and with his conclusions, the Plaintiffs and not the Defendant were entitled to judgment. *Amend. Rev. Stat.*, *p.* 12, *Sec.* 46, *and p.* 13, *Sec.* 49.

*Sixth.*—Because the provisions of the Revised Statutes regulating the costs on appeals from Justices of the Peace in "civil actions," do not govern in cases of appeal in actions against steamboats under Chapter 86, such actions not being technically "civil actions," or governed by the same rules. *Edwards on Bail*, 561, 562 ; 1 *John R.* 116 ; 13 *Barb. R.* 57 ; 5 *Denio* 172 ; *Scikleman vs. Mason*, 1st *Smith's Lea. Cases*, 849 *and cases cited ;* 18 *Ohio* 187.

25

The following are the points and authorities relied upon by the Counsel for the Respondent :

*First.*—The Plaintiffs were not the parties in interest in the subject matter of the cause of action contained in the first count of the complaint ; nor the trustees of an express trust within the meaning of the statute, and if they were the trustees of an express trust, that fact should be alleged, as such fact is a material traversable fact under our system of pleading. *Revised Statutes, p. 333, Sec. 27, 28 and 29 ; Howard's Code, p. 185 and 186.*

*Second.*—*Chapter* 86 *on page* 437 *of the Revised Statutes* does not authorize a proceeding against the boat, for the non-performance or mal-performance, and of contracts of affreightment, &c., made beyond the limits of this State, and therefore the said District Court had no jurisdiction of the Defendant or the action as stated in said first count in the complaint, and found in favor of the Defendant upon that count rightly. 3 *Scam. Rep.* 144, *Frank vs. King ;* 6 *Missouri R.* 374 ; 13 *Missouri R.* 519, *Swearenger et al vs. Steamboat Lynx ;* 18 *Missouri R.* 587, *Fisk vs. Steamboat Falls City ;* 12 *Missouri R.* 261, *Noble vs. Steamboat St. Anthony ;* 12 *Missouri R.* 412, *Twitchell vs. Steamboat Missouri ;* 10 *Missouri R.* 583, *Routan vs. Steamboat Polland ;* 19 *Missouri R.* 517, *James vs. Steamboat Pawnee ;* 16 *Ohio R.* 91 ; 16 *Ohio R.* 178 ; "*Reveille*" *vs. Landreth, decided last term of this Court,* 1 *Minnesota* 390.

*Third.*—There is no allegation nor proof that the owner of the goods did not receive them, and the Court should find for the Plaintiff on this ground.

D. Cooper, Counsel for Appellants.

Sanborn, French & Lund, Counsel for Respondent.

*By the Court*—Flandrau, J.   This action is brought under Chapter 86 of the Revised Statutes, "for the collection of demands against boats and vessels." The Court below find that the contract for the delivery of the pork and flour was

made at Dubuque, Iowa, without the territorial limits of the State, and that in consequence of such fact, the same "is not within the scope of the act by virtue of which this action is brought, and Defendant is not liable for a breach," and on this branch of the case gave judgment for the Defendant, allowing the Plaintiff to recover for the breach of another contract for the delivery of certain buckets, on the ground that such contract was entered into within the State.

As the case is one of much moment to the citizens of this State, and the owners of steamboats and vessels used in navigating the waters thereof, and as the question is yet enveloped in some uncertainty as to what contracts do and what do not fall within the statute, I will review the cases which have been decided under the act by our own Courts, and also those of other States having similar statutes, and endeavor to arrange the class of liabilities which fall within our act, and separate them from those which are not reached by its provisions, to the end of removing the doubts as far as possible which seem to embarrass the application of this act.

The contract in this case was entered into at Dubuque, Iowa, and was to deliver to the Plaintiffs as warehousemen at St. Paul, Minnesota, three barrels of pork and two barrels of flour, and the breach alleged is that the articles were not delivered. It will be seen that the contract, although entered into without the jurisdiction of the State, was to be performed within the State, and it is upon this feature that the question must turn as to whether the contract falls within the operation of the statute or not.

The first time the Supreme Court of the Territory of Minnesota was called upon to give a construction to this act, was in the case of *Nutting vs. the Steamboat War Eagle, reported in* 1 *Minnesota Reports, at page* 256. The action was to recover the value of the Plaintiff's trunk and its contents, under a contract made at Galena, in the State of Illinois, whereby the Defendant agreed to transport the Plaintiff and his said trunk from Galena to St. Paul, and failed to deliver the trunk. The Plaintiff had judgment against the boat, and the Supreme Court affirmed it. The contract it will be seen

was the same there as in the case at bar, that is, it was made without the State and to be performed within it, the breach occurring within the State. No question of jurisdiction was made however in that case, and as the point was not raised, it can only be regarded as authority for the Plaintiff here upon the supposition that the point was assumed.

The next case was that of *Kerr vs. the Steamboat Falls City*, 1 *Minn. R.* 390. This action was for money loaned to the master and manager of the boat to purchase supplies, and which was used for that purpose. The question was made upon demurrer to the complaint, but no point was raised about the money or the supplies which were purchased with it, having been furnished without the State, and the case went off in the District Court wholly upon the point as to whether the contract was of such a character as to subject matter, as was contemplated by the act. It does not appear in the report of the case where the contract was made or to be performed. It was taken to the Supreme Court by writ of error, and all that appears of the disposition made of the case by that Court is in a note of the reporter, which states that the judgment of the Court below was reversed upon a point not raised in the District Court; that the contract set forth in the complaint was made and entered into without the limits of the Territory, and that Chapter 86 of the Revised Statutes would not apply to such a contract, the remedy being against the owners of the boat. No opinion of the Supreme Court is reported. It cannot be collected therefore from this case exactly what the contract was upon which the action was brought, only that it was entered into without the limits of the State. Whether the money loaned for the purpose of purchasing the supplies was to be paid within the State, does not appear, and even if it was to be so paid, it does not follow that that circumstance would have characterized the contract as one to be performed within the State, because the Court allowed the case to come within the operation of the statute, on the ground that money advanced for the purpose of supplies was properly included in the words of the act which renders the boat liable for "debts contracted by the master,

owner, agent or consignee thereof, on account of supplies furnished for the use of such boat," &c., and stood as if the lender had actually furnished the supplies himself. This case stands as an authority therefore only upon the point that a boat is not liable under Chapter 86 of the Statutes, for supplies furnished without the State, and sheds no light upon the question of a contract made without and to be performed within the State.

The next case is that of *Landreth vs. the Steamboat Reveille*, decided by this Court at the December term of 1858. The contract here, was in substance, that the boat should transport certain articles of merchandise from a point without the State to St. Paul, collect the freight and pay it over to the Plaintiff at the point where the contract was made, on the return of the boat; breach, that the money had not been paid over as per agreement. Here the place of making the contract, the place of performance and the place of the breach, were all without the State, and this Court in deciding that such a contract does not fall within the provisions of Chapter 86, make use of the following language when commenting upon the cases in 1 *Minnesota Reports :* "We see no reason for disturbing this construction in a case like the one now under consideration, where not only the contract, but also the breach complained of, was without the jurisdiction of the Territory, and where everything which by the terms of the contract was to be done within the limits of the Territory, was done and performed as stipulated." The case was decided clearly upon the point that the whole subject of contract, and the grievances under it, took place beyond the limits of the State.

The State of Missouri has a statute similar in all respects to our own, concerning boats and vessels, upon which numerous decisions have been made, and are cited in this case on behalf of the boat to prove that our statute does not cover the contract sued upon. I will examine them to see what bearing they have upon it. The case of the *Perpetual Insurance Company vs. The Steamboat Detroit*, 6 *Mo. R.* 374, was on a contract of affreightment from Louisville, in the State of Kentucky, to St. Louis, in the State of Missouri; in this respect

similar to the one at bar. The case went off on a demurrer to the complaint, on the ground that the complaint did not set forth the facts of the demand with sufficient particularity, the statute requiring a detailed statement of all the particulars of the case. It does not decide the point we are discussing.

The next case was that of *Noble vs. The Steamboat St. Anthony*, 12 *Mo. R.* 261. The cause of action was for furniture, &c. furnished the boat at Pittsburgh, in the State of Pennsylvania. The boat had judgment, and the only point decided was that a contract made out of the State did not fall within the provisions of the act. This case cites approvingly the cases of *The Steamboat Champion vs. Jantzen*, 16 *Ohio R.* 91, *and Goodsill vs. The Brig St. Louis, Ib.* 178, and recognizes the identity of the Ohio statutes on this subject with their own.

The case of *Twitchell vs. Steamboat Missouri*, 12 *Mo. R.* 412, was for money loaned to the boat at New Orleans, in the State of Louisiana, to purchase provisions, wood and other supplies. The Defendant had judgment on the ground that the contract was made out of the State. It does not appear that it was to be paid within the State. This case is identical with that of *The Falls City vs. Kerr*, above cited.

Next in order is the case of *Swearinger and Corvell vs. The Steamboat Lynx*, 13 *Mo. R.* 519. The cause of action was for a collision, and the question was whether it occurred within the State. The Court held that it did, and the Plaintiffs had judgment.

In the case of *Fisk vs. The Steamboat Forest City*, 18 *Mo. R.* 587, the question was raised by demurrer to the petition of the Plaintiff. The contract was to transport the Plaintiff and his family and baggage from Portland or Louisville, in Kentucky, to Cairo, in Illinois. Among the baggage was a trunk containing money. The contract was made at the port of embarkation. Before the boat arrived at Cairo the Plaintiff changed his contract with the boat, and on payment of $36 more they extended the voyage to St. Louis, in the State of Missouri. Before the contract was changed the trunk in ques-

tion was lost. The breach declared on was the non-delivery of the trunk at St. Louis. The Defendant had judgment on the demurrer because the contract was made and broken without the State. The trunk having been lost before the change was made, the cause of action arose entirely under the old contract and without the limits of the State. The Court in discussing the question of whether the contract was made within or without the State, say, "So the question is whether the contract, as stated in the petition, is a contract made in the State of Missouri according to the principles of international law. The question is not whether the Plaintiff has any remedy, but whether he is entitled to the peculiar one he has adopted. *In order to this, the contract must have been made in this State, or if made abroad, the parties must have contemplated that it should be performed here.*" This is the first intimation we have from any of the Missouri cases, that a contract entered into abroad, but to be performed within the State would fall within the act, and the Court in this case seem to think that such would be the result.

In *James vs. The Steamboat Pawnee*, 19 *Mo. R.* 517, the contract was for coal furnished at Memphis, in the State of Tennessee, and the Court in giving the boat judgment, cite with approbation all the preceding cases.

In *The Steamboat Champion vs. Jantzen*, 16 *Ohio R.* 91, the cause of action was for an assault and battery committed by one of the officers upon the Plaintiff, while the boat was beyond the territorial limits of the State. The Defendant had judgment. This was the only point decided.

In *Goodsill vs. The Brig St. Louis*, 16 *Ohio R.* 178, the cause of action was for repairs upon the brig made at Detroit, in the State of Michigan. The Court cites the case of the *Champion vs. Jantzen*, and holds simply that as the cause of action occurred without the State, the Defendant must have judgment.

In *The Schooner Aurora Borealis vs. Dabbie*, 17 *Ohio R.* 125, the action was for work and labor done upon the schooner at Oswego, in the State of New York. The Court cite the case of *Goodsill vs. Brig St. Louis*, and give judgment for the

Defendant, no point other than the fact of the contract having been made and broken out of the State being decided.

In *The Steamboat Sultana vs. Chapman*, 5 *Wisconsin R.* 454, the boat contracts to transport from Buffalo, in the State of New York, to Milwaukee, in Wisconsin, certain goods, and deliver them to the Plaintiff. The contract was made at Buffalo. She delivered them at a pier called Higby pier, and not to the Plaintiff, and they were destroyed by fire. On the trial the Defendant objected among other things to the admission of evidence under the complaint, because the contract was made out of the State of Wisconsin, as the question was raised on the trial. The Plaintiffs had judgment which was affirmed by the Supreme Court. The Court in its opinion does not seem to decide this question directly, of the effect of the contract having been made without the State, and leaves it in doubt beyond the fact of allowing the Plaintiff to recover upon the contract. The case is quite unsatisfactory as an authority upon any point, although it involves many. The contract is identical in principle with the one at bar, having been made without the State, to be performed within it.

The State of Michigan had a statute passed in the year 1839, which is identical in language with our own. This statute has received judicial construction in several instances. In the case of *Moses vs. The Steamboat Missouri*, 1 *Manning R. (Michigan) p.* 507, the cause of action was for labor in building the boat in the State of Ohio. The Court holds that no lien accrues against the boat until seized by the warrant; but go the whole length of holding that the statute comprehends all claims whether arising within or without the State.

The act of 1839 in Michigan was repealed by the passage of the Revised Statutes of that State, and Chapter 122 of the Statutes provided for the collection of demands against ships, boats and vessels. The exact language of the act of 1839 is incorporated into Chapter 122 of the Revised Statutes, with the exception of the use of the words, "*shall be subject to a lien thereon*," for the words in the act of 1839, "*shall be liable.*" So that a new question arose under the Revised Statutes, which was determined in the case of *Bidwell vs. Whit-*

*aker et al,*, 1 *Manning R.* 469. It was there held that the Revised Statutes enacted a *specific lien* upon the vessel at the time the cause of action accrued, and as the act could not have any extraterritorial operation, it was confined in its effects to contracts made within the State of Michigan. This case affirms the doctrines of the case of *Moses vs. Steamboat Missouri*, which was made upon the old act. See also, *Robinson vs. The Steamboat Red Jacket*, 1 *Manning R.* 171, which decides the same points involved in *Moses vs. Missouri.*

From this review of the authorities to which we have been cited, I find that it has never been decided directly that a contract made without the State, but to be performed within it, is denied the remedies of these acts, while on the other hand I find that it is strongly intimated in the case of *Fisk vs. Steamboat Forest City*, 18 *Mo.* 587, that such a contract is entitled to the benefits of this class of legislation; and that in the following cases recoveries have been had under similar contracts, where the question has not been raised: *Nutting vs. War Eagle*, 1 *Minn R.* 256; *Steamboat Sultana vs. Chapman*, 5 *Wisconsin R.* 454.

The cases holding that a contract or cause of action accruing wholly without the State is not entitled to the remedies of the act, are : 1 *Minn. R.* 390, *Landreth vs. Reveille, Dec. term,* 1858; 12 *Mo. R.* 261; *Ib.* 412; 18 *Mo. R.* 587; 19 *Mo. R.* 517; 16 *Ohio R.* 91; *Ib.* 178; 17 *Ib.* 125.

The Michigan cases conflict with the Ohio, Missouri, Wisconsin and our own holdings, and extend the operation of the act to all cases without distinction, and only restrict the operation of their present act to the limits of their own State, because by its peculiar terms it creates a *specific lien* at the time of the accruing of the cause of action, which could not of course be accomplished in cases arising beyond their territorial limits.

The weight of authority is without doubt in favor of giving the remedies of the statute to cases where the contract was made without the State, and to be performed within it; and I think that such view can better be sustained by reason than

26

the converse. The question is one of remedy more than of right, and where the breach of the contract occurs within our own jurisdiction, it is certainly not giving an extra-territorial force to our statutes by furnishing the parties aggrieved the remedies they allow.

Our views upon the construction of the statute are, that causes of action arising wholly without the State are not entitled to its special remedies, and if parties seek our Courts as the forum, to enforce their rights in such cases, they must adopt the common law remedies.

That causes of action arising upon contracts made and broken within the State, and contracts made within, and broken without the State, and contracts made without to be performed within, are entitled to the remedies of the statute, and that the same principles govern causes of action mentioned in the statute not arising out of contracts.

The Court erred in giving the Defendant the benefit of the fact of the contract for the delivery of the pork and flour having been made without the State. The judgment should have been for both items of damages, the pork and flour as well as the buckets. The judgment being one where the facts are all found, and the controversy being purely upon a question of law, we modify it by including the item of $77 50-100, and order that it be entered in this Court accordingly. The Appellant is entitled to his costs.