# SMYTH v. BUTTERS et al., County Commissioners.

No. 2095.   Decided September 17, 1910 (112 Pac. 809).

1. INTOXICATING LIQUORS—LICENSES—MANDAMUS TO COMPEL ISSUANCE.  Under Comp. Laws 1907, sec. 3641, providing that mandamus may issue to any inferior tribunal, board, etc., to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded, in order to entitle one to mandamus compelling the granting of a license to sell intoxicating liquors at retail at a particular place, he must show that the granting of a license to sell at that place was, under the facts alleged, specifically enjoined by law on defendants as a duty resulting from thie office as county commissioners, or that their refusal unlawfully precluded him from the enjoyment of a right to which he was entitled.   (Page 156.)

2. INTOXICATING LIQUORS—LICENSES—DUTIES OF OFFICERS—STATUTORY PROVISION.  Comp. Laws 1907, sec. 1242, provides that no person shall sell intoxicating liquors without first obtaining from the board of county commissioners a license therefor. Section 1243 provides that the boards of county commissioners in their respective counties are authorized to grant licenses as contemplated in section 1242, to any person over twenty-one years old, on an application therefor by petition signed by the applicant and filed with the county clerk.  By section 1244 the county commissioners are given the power to determine the amount of the license within certain limits, and the time for which it is granted.  Section 1245 provides that an application for a license may be refused for good cause in the discretion of the board of county commissioners of the county.  *Held*, that the commissioners are not bound to issue a license to every one applying for it, though the application be made in conformity with statute, and the applicant be found to possess all the qualifications requisite for the issuance of a license, it being within their discretion to refuse a license under such circumstances.[1]   (Page 158.)

3. INTOXICATING LIQUORS—LICENSES—MANDAMUS TO COMPEL ISSUANCE.  An applicant for license to sell intoxicating liquors at

[1] Perry v. City Council, 7 Utah, 143, 25 Pac. 739, 998, 11 L. R. A. 446.

retail is not entitled to mandamus to compel the issuance of a license where the county commissioners have acted upon the application and refused it because they are opposed to the issuance of any licenses in the county, mandamus being available only as a remedy to compel the commissioners to hear and determine the application or to issue the license where they have arbitrarily or capriciously refused to issue it.     (Page 166.)

4. INTOXICATING LIQUORS—LICENSES—MANDAMUS TO COMPEL ISSUANCE. On an application for mandamus to compel the issuance of a license by county commissioners to sell intoxicating liquors at retail, an answer alleging that the plaintiff in the previous conduct of his business knowingly and repeatedly permitted intoxicating liquors to be sold on Sunday and permitted gambling to be carried on on the premises in violation of law, and if another license were issued he would continue to carry on the business with such violations of law, stated a complete defense to the complaint.   (Page 167.)

5. INTOXICATING LIQUORS—LICENSES—MANDAMUS TO COMPEL ISSUANCE. In proceedings for mandamus to compel the issuance of a license to plaintiff to sell intoxicating liquors, an order granting plaintiff's motion for judgment on the pleadings which in effect commanded the defendants to issue a license to the plaintiff as prayed for, was inconsistent with a judgment requiring the defendants to determine whether the plaintiff has complied with the provisions of law relating to the granting of licenses, whether or not he is a suitable person to whom a liquor license should be issued and whether for any other reason the license should or should not be granted and directing them not to refuse to grant the license on the ground that they were opposed to the issuance of licenses to sell liquor in the county, and such judgment was not responsive to nor in accordance with the pleadings.   (Page 167.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by D. A. Smyth for a writ of mandamus to T. U. Butters and others, as County Commissioners of Morgan County.

Judgment for plaintiff. Defendants appeal.

REVERSED AND REMANDED, WITH DIRECTIONS TO DISMISS THE ACTION.

*N. J. Harris*, District Attorney, and *Albert R. Barnes*, Attorney General, for appellants.

*A. G. Horn* for respondent.

STRAUP, C. J.

The plaintiff applied to the district court for a writ of mandate to compel the defendants, the county commissioners of Morgan County, to grant him a license to sell intoxicating liquors at retail at Devil's Slide, in Morgan County. It is alleged in the complaint that on and prior to the 1st day of March, 1909, the plaintiff was engaged in such business at such place pursuant to a license theretofore issued to him by the defendants, and that on the day last named he applied to them for a license to there continue the business, but that they refused to grant it. It is further alleged that the plaintiff signed and filed a petition for a license with the county clerk of Morgan County as provided by law, and that he also presented a bond signed by himself and by two good and sufficient sureties in the sum of one thousand dollars, and conditioned as by the statute provided, that he would keep an orderly and well-regulated house, and would not allow gambling with cards, dice, or other device or implements, and that he would pay all damages, fines, and forfeitures which might be adjudged against him under the provisions relating to intoxicating liquors. It is further alleged that the application "was acted upon by said defendants on March 1, 1909, in due and regular meeting of said board of county commissioners, and by them then and there refused and not granted," and that "such refusal was not based upon any defect in the application nor upon any other reason, except that said board was opposed to the granting of any liquor license in said county, and refused said application upon said ground and no other ground." Upon such verified complaint the plaintiff prayed that the defendants be required to issue him a license to sell intoxicating liquors at Devil's Slide, or show cause why they should not do so, and the district court issued an alternative writ of mandate

commanding the defendants, as the county commissioners of Morgan County, to grant the license to plaintiff as prayed for, or show cause why they did not do so.

The defendants filed a motion to quash the writ and a demurrer to the complaint for want of facts. The motion and the demurrer were overruled. The defendants then filed an answer in which they averred that a large majority of the residents and taxpayers of Morgan County was opposed to the granting of licenses for the sale of intoxicating liquors at any place within the boundaries of the county, outside of the limits of incorporated cities, and that a large percentage of the residents and taxpayers of that county had theretofore filed with the county commisioners written protests against the granting of any such licenses; that it was against the interests of Morgan County, and of the residents and taxpayers thereof, to permit the sale of intoxicating liquors at any place within the boundaries of the county, outside the limits of incorporated cities; that a majority of the residents and taxpayers of the precinct in which the plaintiff desired permission to sell intoxicating liquors was opposed to the granting of a license to sell intoxicating liquors at retail therein; and that, in the opinion of the defendants, the permitting of such sales in such precinct was against the best interests of the precinct, and of the residents and taxpayers thereof. It is further alleged by them that during the time the plaintiff was engaged in the business of selling intoxicating liquors at Devil's Slide, prior to the 1st day of March, 1909, under a license theretofore issued to him by the board of county commissioners, the plaintiff, in the conduct of such business, knowingly and repeatedly violated the laws of the state, "and, more particularly, that the plaintiff permitted intoxicating liquors to be sold and disposed of on the premises on the first day of the week, commonly called Sunday, and that at divers times during said period he permitted upon said premises gambling, by means of cards, slot machines, and other devices," contrary to law; that the defendants believed if a license were issued to the plaintiff, as applied for by him, he would continue in

the conduct of such business upon his premises, to violate such laws, and that, in the opinion of the defendants, no license should be granted him to sell intoxicating liquors at such place. Upon the filing of such answer the plaintiff moved for a judgment upon the pleadings. After argument and submission, the court took the motion under advisement, and subsequently orderd and adjudged "that said motion be, and the same is hereby, granted." Thereupon the court, without evidence or any further proceedings, made findings of facts, finding all the allegations of the complaint to be true, and upon such findings ordered and adjudged that "a peremptory writ of mandamus issue to the defendants," commanding them "immediately after the receipt of this writ to proceed to consider whether or not the plaintiff has complied with the provisions of law relating to the granting of liquor licenses, whether or not he is a suitable person to whom a liquor license for the sale of intoxicating liquors at retail at the place petitioned for should be granted, and whether or not for any other reason applicable to the granting of this particular license, the said license, in the exercise of their discretion, should or should not be granted, other than the general objection to granting any license at all for the sale of intoxicating liquors at retail in said county, and said defendants are further directed not to refuse to issue the said license to the said plaintiff upon the ground that they are opposed to the granting of any liquor license in said county."

From such judgments the defendants have prosecuted this appeal. The principal errors assigned relate to the rulings overruling the demurrer and the motion to quash, and granting judgments on the pleadings and so-called findings. They involve the question whether the determination of the commissioners in refusing to grant the plaintiff a license on his application can be controlled by mandamus, and, if so, whether the judgments entered by the lower court on the pleadings and findings were justified. The nature and object of a writ of mandamus have often been stated. "It is a command," said the court in the case of *Johnson's License,*

165 Pa. 315, 31 Atl. 203, "to some official or other officer to proceed to the discharge of some official duty. When that duty is deliberative or depends upon the exercise of an official discretion the purpose of the writ is to quicken the action of the officer and require him to proceed to hear, to deliberate, to exercise his discretion. It does not lie to revise the decision of any person clothed with judicial, deliberative or discretionary powers. If a judge declines to hear, or delays a hearing unreasonably, a mandamus is the appropriate remedy. It commands him to proceed to a hearing and decision, but it is not a substitute for an appeal, and it does not brings up for review the soundness of the discretion used or the correctness of the decision reached. This rule is applicable to petitions for licenses to sell (intoxicating liquors) at wholesale as well as at retail."

In a recent case the Maryland court (*Gross v. Mayor of Baltimore,* 111 Md. 543, 75 Atl. 346) concisely stated the rule that "the essential question to be determined in all such cases is whether the nature of the duty is imperative or discretionary. If it be the former the writ will be granted or not according to the merits of the case, but if it be the latter the writ will not be granted at all." And to that effect is our statute (section 3641, Comp. Laws 1907), which provides that the writ may issue to any inferior tribunal, board, etc., "to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is unlawfully precluded by such inferior tribunal, board," etc. To entitle the respondent to the writ, it therefore is incumbent upon him to show that the granting of a license to him to sell intoxicating liquors at retail at Devil's Slide, the particular place named in his petition, was, under the facts alleged, specifically enjoined by law upon the defendant as a duty resulting from their office as county commissioners, or that their refusal unlawfully precluded him from the enjoyment of a right to which he was entitled.

Section 1242, Comp. Laws 1907, relating to intoxicating liquors, is as follows: "No person shall manufacture, sell, barter, deal out, or otherwise dispose of any spirituous, vinous, malt, or other intoxicating liquors, without first obtaining from the board of county commissioners of the county, or city council of the city, or board of trustees of the town in which he intends to do business, a license therefor, as hereinafter provided."

By section 1243 it is provided that: "The boards of county commissioners in their respective counties, and the city councils in their respective cities, and the boards of trustees in their respective towns, are hereby authorized to grant licenses, as contemplated in section 1242, to any person over the age of twenty-one years, upon an application being made for such license, by petition signed by the applicant and filed with the county clerk, city recorder, or town clerk, as the case may be. Said petition must state definitely the particular place at which any of the liquors named in section 1242 are intended to be manufactured, sold, bartered, dealt out, or otherwise disposed of, and whether the applicant intends to carry on a retail or wholesale business."

It is further provided by that section that, before a license is granted, the applicant shall execute a bond with two or more sureties in a sum not less than five hundred dollars and not more than one thousand dollars, to be fixed and approved by the board of county commissioners, etc., and conditioned, as in that section provided, that during the continuance of his license he will not allow gambling with cards, dice, or other device or implements, that he will keep an orderly and well-regulated house, and that he will pay all damages, fines, and forfeitures which may be adjudged against him under the provisions of the title relating to intoxicating liquors.

By section 1244 the county commissioners, etc., are given the power to determine the amount of the license, which shall not be less than four hundred dollars for a period of one year, and the time for which it is granted which shall not be for a longer period than one year, nor less than three

months. And by section 1245 it is further provided that
"any application for. such license may be refused for good
cause, in the discretion of the board of trustees of the town,
the city council of the city, or the board of county commis-
sioners of the county," etc.

It is in effect contended by respondent that when an ap-
plication for a license in conformity with the statute is made
and the applicant shows himself to possess the qualifications
requisite for the issuing of a license under the statute, it
then becomes the imperative duty of the commissioners to
grant the license, and that they cannot lawfully, in the exer-
cise of any other discretion, refuse it. And he is required to
take such a position, else the complaint does not show a
plain legal duty resting upon the commissioners to grant the
license.

We do not think that under the statute the commissioners
are bound to issue a license to every one applying for it,
though the application be made in conformity with
the statute, and the applicant found to possess all the
qualifications requisite for the issuance of a license.]
And such is the effect of the holding in the case of *Perry
v. City Council,* 7 Utah, 143, 25 Pac. 739, 998, 11 L. R. A.
446. In that case the granting of a license upon an applica-
tion made in conformity with the requirements of the statute
and the ordinances of the city was refused by the council
without assigning any reason therefor. Upon an application
for a writ of mandamus to compel the council to issue a
license to the applicant the writ was denied on the ground
that the granting or refusing of a license was within the dis-
cretion of the council. The then powers conferred upon the
council, and the ordinances of the city relating to the issuing
of such licenses, were, as appears in the statement of the case,
similar to those conferred upon the county commissioners,
and the present statutes, heretofore referred to, with the
exception that the latter in express terms confer upon the
commissioners a discretion to refuse the granting of a license,
In that case, Mr. Justice Zane, in delivering the prevailing
opinion, and in holding that the council had conferred upon

it "a wide discretion" in the matter, said: "It is apparent from the act under consideration that the intention of the legislature in conferring on the city council the power to regulate the sale of liquor was to enable that body to protect society from the evils attending it. The benefit of the dealer was not the chief end, therefore the duty of the council with respect to him must depend largely on the good of the neighborhood."

He further approvingly referred to the cases of *Muller v. Com'rs,* 89 N. C. 172, and *State v. Holt County Court,* 39 Mo. 521, where it was held that even though the application for a liquor license was made in conformity with the requirements of the statute, and the party applying possessed all the required qualifications for the issuance of a license under the statute, still the commissioners, and the county court upon whom was conferred the power to grant liquor licenses, could, in the exercise of their discretion, refuse to grant it. In those cases the statute conferred no wider discretion upon those authorized to grant licenses than is conferred by our statute upon the board of county commissioners. If upon an application for a license made in conformity with the statute, and the applicant shown to possess all the qualifications requisite for the issuing of a license, the county commissioners have no discretion to refuse the granting of the license, then, upon application, might the commissioners be obliged to grant a license to sell intoxicating liquors at every settlement, or neighborhood, or cross-roads, in the county; and not only one or a half a dozen at each place, but as many more as there were persons showing themselves so qualified and applying for a license. The legislature undoubtedly vested the county commissioners with the power of passing upon applications for permission to sell intoxicating liquors. In passing upon such question they may not only consider whether the applicant it twenty-one years or more of age, whether his application is in due form, and whether his proposed bond is good and sufficient, but also whether the person applying for the license is a proper person to be intrusted with the conduct of such business, whether the place

proposed to engage in the business is suitable, whether the demands of the public require such accommodations at such place, and they may also take into consideration many other questions involving the safety, peace, good order, morals, and public good of the neighborhood or community in which it is proposed to engage in the business.

That there are certain dangers, and evils attending the business of selling intoxicating liquors is generally conceded and recognized. Mr. Justice Field, in the case of *Crowley v. Christensen,* 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620, said:

"There is no inherent right in a citizen to sell intoxicating liquor by retail; it is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue license for that purpose."

And, as we have seen, by our statute a wide discretionary power is conferred upon the board of county commissioners in passing upon applications for licenses to sell intoxicating liquors within their territorial jurisdiction. When an application for a license is made to them, it unquestionably is their duty to consider it, to make proper inquiry concerning it, and, upon the responsibility of their official oath, to reach a determination. But the duty of the commissioners in the premises to grant licenses is not imperative and mandatory. It is discretionary.

In *State v. Board of Com'rs,* 60 Minn. 510, 62 N. W. 1135, the court said:

"Whether a license to sell intoxicating liquors shall be granted or refused rests in the discretion of the board of county commissioners in the exercise of which they act judicially and not ministerially, and therefore their action cannot be controlled or reviewed by mandamus." And in *State ex rel. Howie v. Common Council of Northfield,* 94 Minn. 84, 101 N. W. 1064, that court again said:

"The provisions of the charter vest in the common council authority to regulate and control the sale of intoxicating liquors within the city, and in exercising that authority the council is clothed with discertionary powers, the exercise of which cannot be controlled by the courts. The power to regulate and control includes the power to do all that is deemed, in the judgment of the council, for the best interests of the municipality and its inhabitants. It necessarily confers the power to refuse a license, or to limit the number of licenses to be granted, when, in the judgment of the council, the welfare of the city suggests such action."

In *Stanley v. Monnet,* 34 Kan. 708, 9 Pac. 755, the court said:

"We think the motion to quash must be sustained. The probate judge is vested by the statute with discretionary power in granting permits (to sell intoxicating liquors by druggists), and the duty to do so is not peremptory and absolute. It is not claimed that the probate judge refused to receive or consider the application presented. He has heard the application, and determined not to grant the same. He refuses to give his reasons therefor, but that is immaterial; he has acted."

In *Ramagnano v. Crook,* 85 Ala. 226, 3 South. 845, the court said:

"In *Dunbar v. Frazer,* 78 Ala. 538, it was held that the judge of probate, in granting or refusing a license to retail spirituous liquors under the act of February 17, 1885, acts in a quasi judicial capacity, whether the application is or is not contested, and that his action cannot be reviewed or controlled by mandamus. A mandamus will be issued to compel a judicial officer to act, when it is his duty, and he refuses, but not to direct him how to act. In the present case, the judge of probate acted; and the sufficiency of the reasons for his action cannot be reviewed by mandamus, though they may be erroneous."

These views are also supported by the following cases: *Ex parte Whittington,* 34 Ark. 394; *State v. Stiff,* 104 Mo. App. 685, 78 S. W. 675; *Devin v. Belt,* 70 Md. 352, 17 Atl. 375; *Eve v. Simon,* 78 Ga. 120; *Malmo's Appeal,* 72 Conn. 1, 43 Atl. 485; *Batters v. Dunning,* 49 Conn. 479; *State v. Bonnell,* 119 Ind. 494, 21 N. E. 1101; *Swift v. People,* 63 Ill. App. 453; *Barnes v. County Com'rs,* 135 N. C. 27, 47

S. E. 737; *People v. Murphy,* 65 App. Div. 123, 72 N. Y. Supp. 473; *Burke v. County Com'rs,* 18 S. D. 190, 99 N. W. 1112.

It is not averred here that the commissioners refused to examine or consider, or act upon, the application. To the contrary it is averred in the complaint that the application "was acted upon by said defendants in due and regular meeting of said board of county commissioners, and by them refused and not granted." These cases, to a large extent, proceed upon the theory that the retail traffic of intoxicating liquors is one which confessedly requires to be kept in prudent hands, and that where the legislature conferred the power upon authorities to regulate, restrict, and control the traffic, and the power, in passing upon applications, to grant or refuse licenses in their discretion undefined and unprescribed by the legislature, the responsibility for the proper conduct of such business rests with such authorities; and, in the language of the court in *Ex parte Whittington, supra,* if they do not act with a view to the public interests, the legislature may take away their power and discretion, or the people may elect more satisfactory officers upon whom such power and discretion has been conferred; and in the language of the federal court in the case of *In re Hoover* (D. C.), 30 Fed. 51, that the state may authorize the sale of spirituous liquors on such terms, by such persons, and at such places, as it thinks proper, "and if it may do this directly, may it not delegate to others the exercise of the power? It has simply delegated a portion of its sovereignty to the county commissioners of Chatham County. The commissioners, in the exercise of that sovereignty, refuse a license to the petitioner. The discretion must rest somewhere. The state might have exercised it. It intrusts its discretion to the board of county commissioners, and, as I have said, by the terms of the grant, this discretion is final and not reviewable. This power is inseparable from the sovereignty of the state."

We are not unmindful of rulings made that even though a licensing board may be vested with a discretion in the mat-

ter of granting licenses, it cannot act arbitrarily or capriciously in refusing to issue a license, and that where it is made to appear that an applicant is entitled to a license upon a compliance with the statutory requirements, and the action of the board is of such a character, issuance of the license may be compelled by mandamus (Joyce on Intoxicating Liquors, section 271), and the allegations contained in the complaint that the refusal of the defendants to grant plaintiff a license was not based "upon any defect in said application, nor upon any other reason, except that the board was opposed to the granting of any liquor license in said county."   Even though it be conceded that the discretion conferred upon the commissioners cannot be exercised arbitrarily or capriciously, and that the allegation referred to is sufficient to show the discretion to have been exercised in such manner, still, before the respondent is in a position to complain, it is essential for him to show by proper averments that a plain legal duty rested upon the commissioners to grant a license to him.   In this connection we must not lose sight of the action of the court invoked by plaintiff.   It was not that the commissioners had refused to examine or consider, or act upon, his petition, or that their determination was the outcome or result of no or an improper examination or consideration, but that they, in a due and regular meeting of the board, had acted on it, and refused to grant the plaintiff a license upon insufficient reasons, and hence the action of the court was invoked to compel the commissioners to issue a license to him, or show cause why they should not do so.   If upon the filing of a petition for a license in conformity with the statute, and a showing that the applicant possessed all the qualifications requisite for the issuing of a license, a plain legal duty was imposed upon the commissioners to issue a license, and they arbitrarily or capriciously refused to do so, then mandamus might well lie to compel the issuance of it.   But the statute does not impose a duty upon the commissioners to issue a license upon such conditions or findings, or upon conditions set forth in the allegations of the complaint, that the plaintiff had filed a petition or ap-

plication with the county clerk for a license in which the place proposed to sell intoxicating liquors at retail was designated, and had presented a proper bond with good and sufficient sureties. And we may again say, as was said by the court in *Barnes v. Commissioners, supra,* "the judgment of the court is based entirely upon the theory that after finding that the applicant is a fit person and that the building is suitable, and the other recited facts, the commissioners have no discretion left in the matter. This is an error, for the statute expressly provides that even though when those facts are found the commissioners *may* grant license, and not that they *must* do so." Our statute merely "authorized" the county commissioners to grant licenses to sell intoxicating liquors. It does not in express terms require or command them to do so. The use of the word "authorized" in such a statute is permissive, not mandatory.

In construing a statute "authorizing and empowering" the mayor to grant theatrical licenses, the New York court, in the case of *People v. Grant,* 58 Hun, 455, 12 N. Y. Supp. 879, observed: "The rule undoubtedly is that where public bodies or officers are empowered to do that which the public interests require to be done, and adequate means are placed at their disposal, the proper execution of the power may be insisted upon, though the statute conferring it is only permissive in its terms. . . . But why, it may be asked, should this construction be given to the act under consideration? What public interest demands that the mayor should be required under all circumstances to accept the fee and grant the license? It seems to me that it is quite the other way. The public good clearly requires that the permissive words in question should be read in the natural and ordinary sense." Such ruling was later approved by the same court in the case of *People v. Murphy, supra.*

Even though it may be said that under the statute a duty is implied to license some one, yet there is nothing in the statute which can properly be construed as imposing a legal duty to license any particular person. And certainly no duty is imposed upon the commissioners to grant a license

within the range of their power to all who may apply and show qualifications requisite for the issuing of a license. It may again be observed, as was said by the court in the case of *Barnes v. Commissioners, supra,* that "while their descretion is not an arbitrary one, this is far from proving that the courts can by writ of mandamus coerce the commissioners in exercising that discretion in favor of any particular person, or in any particular way. If the case of *Attorney-General v. Justices* (27 N. C. 315) decides anything, it certainly decides that a mandamus will not be issued for the purpose of compelling the body invested with the discretion of granting or refusing a license to issue a license to a person whose application has been rejected by them. In that case the justices refused the application upon the single ground that their power to do so was absolute. No stronger case for a mandamus, if one can issue in any case, could have been presented, and yet the court adjudged that 'because this is not a case for a mandamus, the judgment of the court must be reversed, and the motion for a peremptory mandamus is refused.'"

The legislature saw fit not to prescribe the conditions upon which the commissioners were required to grant liquor licenses. Should the courts, by mandamus, compel or coerce them to do so upon certain assumed or existing conditions, they would but do what the legislature itself saw fit not to do. No one has an unqualified or inherrent right to carry on the business of selling intoxicating liquors at retail, nor a vested right to do so which he may ask to be enforced; nor can it be said that it concerns or promotes the public interests for any one to exercise it. (*Ex parte Whittington, supra; Malmo's Appeal, supra.*) And, as said by the court in the case of *State ex rel. v. Stiff, supra,* "the business of selling liquor is not a right and cannot be likened to the ordinary callings of life; that it is a mere privilege to be granted or withheld at the exclusive discretion of the body empowered to license." The refusal of a license to plaintiff, therefore, did not unlawfully preclude him from the enjoyment of a right to which he was entitled.

As already observed, when an application is made to the county commissioners for a license, they may not refuse to examine or consider it, or, without examination or consideration, arbitrarily or capriciously reject it.  When the application is properly made in conformity with the statute, it is their legal duty to examine and consider it, to make proper inquiry concerning it, and to reach a decision or determination as the result or outcome of such examination, consideration, and inquiry.  When they have done that they have discharged their official duty, so far as the courts have any power to control them in the premises.  If, as the result of such a determination, they reach a conclusion to grant or refuse a license to an applicant, they are not answerable to the courts for their conduct and discharge of duty, but to the people who conferred the power upon them to regulate and control the liquor traffic and clothed them with the discretion to grant or refuse liquor licenses.  It is only upon averments and proof that they arbitrarily and capriciously disapproved and rejected an application without examination, consideration, and inquiry that the courts may interfere, and then not to direct them how to act or to decide the matter, or to compel or coerce them to issue or refuse a license to any particular person upon certain assumed or existing conditions.

We are of the opinion that under the statute, and upon the facts alleged in the complaint, it is not made to appear that a plain legal duty was imposed upon the commissioners to issue a license to the plaintiff upon his application, or that their refusal to do so unlawfully precluded him from enjoying a right to which he was entitled, and therfore the court erred in overruling the demurrer.

For additional reasons we are also of the opinion that the court erred in rendering judgment on the pleadings and findings.  The plaintiff contends that he was entitled to a judgment on the pleadings on the ground that the defendants had failed to specifically deny the allegation in the complaint that the license was refused plaintiff for the reason that they were opposed to the granting of any license to sell intoxicat-

ing liquors in the county. Here again, the relief sought by plaintiff by his complaint must be kept in mind. It was to compel the defendants to issue a license to him to sell intoxicating liquors at retail at a particular place, Devil's Slide, or show cause why they should not do so. In response to the alternative writ to grant a license to the plaintiff for such purpose or show cause, the defendants, among other things in their verified answer, alleged that the plaintiff in the conduct of such business at such place, and in pursuance of a license theretofore issued to him, knowingly and repeatedly permitted intoxicating liquors to be sold and disposed of on Sunday, and there upon his premises where such business was conducted knowingly and repeatedly permitted gambling to be carried on by means of cards, slot machines, and other devices, in violation of law, and that if another license were issued to him he would continue to carry on the business with such violations of the law. The undoubted effect of such averments was that the plaintiff was not a suitable person to be intrusted with the conduct of the business, and unquestionably was a showing of good cause why the court should not by mandamus direct a license to be issued to him. The plaintiff, by his motion for judgment on the pleadings, at least for the purposes of the motion, admitted the truth of the facts thus averred by the defendants. The only judgment which the court could have rendered for the plaintiff, on the motion, was to direct the defendants to issue a license to him in accordance with the allegations and prayer of the complaint. But confessedly such a judgment could not properly have been rendered by the court in the face of the averments contained in the verified answer. Such averments did not controvert only a part of the cause of action alleged in the complaint, but constituted a complete defense.

The court in effect made two inconsistent orders, or rendered two inconsistent judgments. First, the court, after being "sufficiently advised," made an order granting plaintiff's motion for judgment on the pleadings, which indirectly, and, were it not for the subsequent

order or judgment of the court, directly required and commanded the defendants to issue a license to the plaintiff as prayed for in his complaint, and which was a ruling that the cause or causes averred in their answers why they had not done so, was no cause. Then the court, without evidence or further proceedings, made findings of facts, that the allegations of the complaint were true, and upon such findings made an order, or rendered a judgment, remanding the case back to the defendants, in effect, to proceed and determine whether the verified answer filed by them was true or not, and "whether the plaintiff has complied with the provisions of law relating to the granting of liquor licenses, whether or not he is a suitable person to whom a liquor license for the sale of intoxicating liquors at retail at the place petitioned for should be granted, and whether or not for any other reason applicable to the granting of this particular liquor license, the said license, in the exercise of their discretion, should or should not be granted," and admonished and directed them that they must not refuse to grant the license on the ground that they were opposed to the granting of licenses to sell intoxicating liquors in the county. Such a judgment was not responsive to, nor in accordance with, the pleadings. As before observed, the complaint does not proceed upon the theory that the defendants had refused to consider or examine the application, or to act, or to proceed to a decision or determination, but upon the theory that the plaintiff, upon the filing of his petition with the county clerk for a license in conformity with the statute, and the presentation of a proper bond as required by the statute, was entitled to a license, and that a plain legal duty was imposed upon the defendants to grant it, and that their refusal to do so was based upon insufficient reasons or invalid grounds, and hence the action of the court was invoked, by mandamus, to command and compel the defendants, not to hear and determine whether the plaintiff was entitled to a license, but to issue one to him.

We are of the opinion that the judgment of the court below ought to be reversed and the case remanded to the district court, with directions to dismiss the action. It is so ordered. Cost to appellants.

FRICK and McCARTY, JJ., concur.